UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MANUEL JAMIE,

Plaintiff,

v.

FAYE JENKINS, ET AL.,

Defendants.

_____/

Case No. 19-cv-10595

UNITED STATES DISTRICT COURT
JUDGE GERSHWIN A. DRAIN

## OPINION AND ORDER (1) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [24]; AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [25]

### I. INTRODUCTION

On February 27, 2019, Plaintiff Manuel Jamie ("Plaintiff") filed the instant action pursuant to 42 U.S.C. § 1983 against Defendants Faye Jenkins, Teresa Doe, and Jane Doe, in their official and individual capacities for alleged violations of his Eighth and First Amendment rights. *See* ECF No. 1. On August 21, 2019, Plaintiff filed his First Amended Complaint, naming Defendants Wayne County Deputy Sheriff Faye Jenkins, Cpl. Kristin Montgomery, Theresa Torre, and Jane Doe (collectively, "Defendants") in their individual and official capacities. *See* ECF No. 11.

Presently before the Court are the Plaintiff's Motion for Partial Summary Judgment, which was filed on June 19, 2020, and Defendants' Motion for Summary Judgment, which was filed on June 22, 2020.  ECF Nos. 24, 25.  Both motions are fully briefed.  A hearing on this matter was held on December 29, 2020.  For the reasons that follow, the Court will **DENY** Plaintiff's Motion for Partial Summary Judgment [#24].  Additionally, the Court will **GRANT IN PART** and **DENY IN PART** Defendants' Motion for Summary Judgment [#25].

## II. BACKGROUND

Plaintiff's claims stem from a physical altercation with another incarcerated individual, Mandela Horton ("Horton"), on or about December 6, 2016, at the Dickerson Detention Facility.  Horton, along with three other incarcerated individuals, allegedly threatened Plaintiff with physical harm because he provided information about their purported affiliation with a "smuggling ring of contraband" in tandem with the Wane County Jail's civilian staff.  ECF No. 24, PageID.106. Plaintiff alleges that Defendants knew of the threat of imminent harm to Plaintiff yet assigned Plaintiff to the same job assignment as Horton.  ECF No. 11, PageID.48. He now brings the present § 1983 action against Defendants, alleging that Defendants violated his Eighth and First Amendment rights.  *See generally id.*

### A. Plaintiff's Incarceration at Wayne County Jail

Plaintiff began serving a six-month sentence at the Wayne County Jail in September 2016.  ECF No. 25, PageID.477.  On November 6, 2016, Plaintiff reported that he was threatened by Horton, along with three other incarcerated individuals and trustees, after he provided information to Corporal Juan Jones that these individuals were "involved with smuggling [a] ring of contraband" into the jail.  ECF No. 24-2, PageID.129.  The smuggling incident allegedly involved contraband from the outside jail delivery docks to the housing units.  ECF No. 25, PageID.477.

In his written incident report, Corporal Jones indicated that Horton and the other trustees were a "serious security risk" to the jail and thus requested for them to be "immediately removed as trustees."  ECF No. 24-2, PageID.129.  Corporal Jones separated Plaintiff from Horton and notified jail Classification Officer William Bako.  *Id.*  He also entered a "Keep Separate" entry into the jail's computer system.  ECF No. 24-4.  "Keep Separate" orders indicate that listed incarcerated individuals cannot be housed together or assigned to the same job at the Wayne County Jail.  ECF No. 25, PageID.478.  According to Defendants, there is no evidence that Plaintiff and Horton saw each other again at the Wayne County Jail.

Later that day, civilian supervisor of the trustee workers Defendant Theresa Torre approached Corporal Jones about why her trustees, including Plaintiff and

Horton, were fired. *Id.* Corporal Jones noted in his report that Torre called Plaintiff a "liar" who "constantly [made] false accusations about other inmates." ECF No. 24-2, PageID.129. Corporal Jones also indicated that Torre received an anonymous call who informed her that Plaintiff made accusations of her smuggling in contraband to the jails. *Id.* Corporal Jones informed Torre that she had not been implicated. *Id.* During her deposition, Torre denied speaking with Corporal Jones or receiving a call from a co-worker about Plaintiff. *See, e.g.*, ECF No. 24-8, PageID.328.

On November 7, 2016, a security inspection revealed that many incarcerated individuals, including Plaintiff, were found to have contraband. ECF No. 25-10, PageID.941. Plaintiff was removed from the trustee program that same day. ECF No. 25, PageID.479. Plaintiff also was interviewed by supervising staff that day, where he summarized his reports of threats made to him after he informed Corporal Jones about the smuggling incident. ECF No. 25-11, PageID.943. He indicated that he feared for his life and that he didn't know if the other trustees were going to hurt him. *Id.*

Prior to his transfer to the William Dickerson Detention Facility, Plaintiff alleges that Corporate Jones informed him that he would neither be housed nor assigned to work with Horton. ECF No. 24, PageID.107–08. Plaintiff was

transferred to the Wayne County Jail Division 3, Hamtramck Jail on November 7, 2016.  ECF No. 25, PageID.479.

### B. Plaintiff's Incarceration at the William Dickerson Detention Facility

Plaintiff claims that after his arrival at the William Dickerson Detention Facility (hereinafter, "Dickerson"), he "kited" Defendant Corporal Kristin Montgomery and asked to meet for a job assignment and discuss time credits.  ECF No. 24, PageID.109.  During his deposition, Plaintiff recounted his conversation with Montgomery:

> I told her my name and she said "You're the guy that told on them boys and put them on the hole.  You lied on those guys and got them down to the hole.  You lied on them guys and you put them in the hole."  And I'm like "What?"  She like, "Yeah, you a snitch.  You was telling lies on these guys and they ain't doing nothing."
>
>       *        *        *        *
>
> [S]he just looking, "Yeah I don't know what I'm going to do with you," and start smiling after me, laughing at me.  She looked over and she goes "Would you want me to go to laundry or sanitation?"  I was, like, "I don't care.  I just want a job."  She said, "You took that time from me.  You're not going to get that.  You'll hear from me."  And that's when she said, "Yeah, you snitched on them boys," and I was, like, I didn't know what else to say.  And she sent me back to the unit and all I remember is – like I said, that's the only time I seen her at that time.  And then when I got assaulted –

ECF No. 24-9, PageID.360.

Plaintiff avers that Montgomery wrote "Laundry" on the upper left corner of Plaintiff's file jacket.  ECF No. 24, PageID.110.  Montgomery testified that she did

not see her name or her number assigning him to "Laundry."   ECF No. 24-5, PageID.188.  Defendants assert that Plaintiff did not have a job assignment until the day before his fight with Horton on December 7, 2016.  ECF No. 25, PageID.480.

The parties dispute Plaintiff's specific work assignment on the morning of December 7, 2016.  Plaintiff asserts that he was told he had a job in the laundry room, ECF No. 24, PageID.111, while Defendants explain that Plaintiff was to work on the "Linen/Housekeeping Detail," ECF No. 25, PageID.481.  Defendants state there "[t]here is no evidence by any witness that Plaintiff was ever doing what is universally understood as a LAUNDRY ASSIGNMENT, which would have been prohibited by the red flags 'KEEP SEPARATE' order built into the classification system."  *Id.* (emphasis in original).

Plaintiff claims that after a lunch break, Horton punched him in the head and knocked him unconscious.  ECF No. 24, PageID.111.  He described the assault as follows:

> I walked in.  I believe me and Mr. Horton seen each other and there was a couple other inmates in there and he said something to me like "Why did you snitch?"  And I told him I didn't snitch.  We got into it, like a verbal argument, and then all the people down there, as soon as you're labeled as a snitch they basically force you to go to fight.
>
> So me and Mr. Horton, I believe that's him, we go in the corner and – I was scared to tell anybody because I wasn't supposed to be around this person, that's what I was told by Corporal Jones, and all I remember is me putting my hands up and that's all I remember and me waking up and I couldn't walk.

ECF No. 24-9, PageID.362.  Plaintiff explains that when he woke up, he was unable to walk and that he was in excruciating pain, confused, and frightened.  ECF No. 24, PageiD.111.

The parties do not dispute that when a guard asked Plaintiff about what happened, he did not mention the fight, but instead claimed that he fell.  *Id.*; *see also* ECF No. 25, PageID.483.  On December 8, 2016, Plaintiff disclosed the assault with Dr. T. Clafton after an examination revealed Plaintiff had two broken ankles.  ECF No. 25-19, PageID.964.  Plaintiff was then sent to the hospital for additional treatment.  ECF No. 25, PageiD.483.

Dickerson's security staff documented the assault and subsequently moved Horton to "[l]ocked status in Segregation" until he participated in a disciplinary hearing.  ECF No. 25-19, PageID.964.  Horton was ultimately prosecuted by Wane County for assaulting Plaintiff.  ECF No. 25, PageID.483.  Defendants emphasize that Plaintiff did not cooperate in the case.  *Id.*

### C. Plaintiff's § 1983 Suit

On February 27, 2019, Plaintiff filed the present action pursuant to 42 U.S.C. § 1983 against Defendants Faye Jenkins, Teresa Doe, and Jane Doe, in their official and individual capacities.  ECF No. 1.  Plaintiff sought discovery to determine "the identity of the officer who assigned him to laundry."  ECF No. 24, PageID.112.  In his First Set of Interrogatories and Request for Production, Plaintiff asked

Defendants to identify material related to when "Defendant Jenkins … assigned Plaintiff to work in the Laundry on December 5 and/or 6, 2016."  ECF No. 24-15, PageID.468.  In their response, Defendants stated "Defendant Jenkins did not assign Plaintiff to work in laundry, Corporal Kristin Montgomery did."  *Id.*  Plaintiff then amended his First Amended Complaint on August 21, 2019 to add Montgomery, as well as Theresa Torre, as named defendants.  ECF No. 11.  The First Amended Complaints includes two counts for Defendants' alleged violations of Plaintiff's Eighth and First Amendment rights.  In their present briefs, the parties dispute whether Defendants' August 2019 discovery admissions are binding in this matter.

### D. Parties' Present Motions

Plaintiff filed his Motion for Partial Summary Judgment on June 19, 2020. ECF No. 24.  Plaintiff argues that there is no genuine question of fact as to whether Montgomery violated his Eighth and First Amendment rights.  *Id.* at PageID.115. Moreover, Plaintiff contends that qualified immunity does not shield Montgomery from liability.  *Id.* at PageID.124.  Plaintiff thus moves for partial summary judgment as to Montgomery.

Defendant Montgomery filed her Response on July 10, 2020.  ECF No. 27. She argues that Plaintiff cannot establish that any prison official was both aware of facts from why they could infer a substantial risk of harm existed for Plaintiff, or that any of them drew the inference that Plaintiff would be harmed by Horton, which

is required to impose constitutional liability.  *Id.* at PageID.1081.  As to Plaintiff's Eighth Amendment claim, Montgomery argues that Plaintiff cannot prove deliberate indifference when (1) there is no evidence that she assigned Plaintiff to a laundry job; (2) Plaintiff admitted his job involved "changing out" the linens with a supervisor guard; and (3) the written notation on a physical file jacket does not automatically signify that an individual was given a job assignment, "but rather could have been a future sorting designation."  *Id.* at PageID.1092–93.  As to Plaintiff's First Amendment claim, Montgomery argues that even if the Court assumes Plaintiff's allegations that Montgomery called Plaintiff a "snitch," "evidence clearly establishes that Plaintiff was assigned LINEN EXCHANGE/Housekeeping," rather than the laundry unit. *Id.* at PageID.1094.  She asserts that she had no knowledge of Plaintiff's and Horton's involvement in contraband smuggling.  *Id.*  Lastly, Montgomery argues that qualified immunity protects her from liability for Plaintiff's claims.  *Id.* at PageID.1095.

Defendants separately filed a Motion for Summary Judgment on June 22, 2020.  ECF No. 25.  They argue that Plaintiff cannot establish that any prison official was both aware of facts from which they could infer a substantial risk of serious harm existed for Plaintiff, or that any of them drew the requisite inference that Plaintiff would be harmed by Horton.  *Id.* at PageID.477.  Defendants also maintain that qualified immunity protects all Defendants from liability.  *Id.* at PageID.492.

Lastly, Defendants argue that all "official capacity" claims against them should be dismissed since there are no allegations of unconstitutional county policies or customs, nor any evidence of training failures. *Id.* at PageID.494.

Plaintiff opposed Defendants' Motion on July 13, 2020. ECF No. 28. In addition to arguing that Defendants violated his Eighth and First Amendment rights, Plaintiff asserts that qualified immunity does not shield Defendants from liability. *Id.* at PageID.1129. Moreover, Plaintiff contends that he produced sufficient evidence to satisfy his *Monell* claim against Wayne County. *Id.* at PageID.1130.

The parties timely filed Reply briefs to their respective Motions.

### III. LAW & ANALYSIS

#### A. Leave to Withdraw or Amend Responses to Request for Admission

#### 1. Legal Standard

The subject matter of a request for admission is deemed "admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3).

> A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended. Subject to Rule 16(e), the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits.

Fed. R. Civ. P. 36(b). "A district court has considerable discretion over whether to permit withdrawal or amendment of admissions." *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 154 (6th Cir. 1997) (internal quotation marks and citation omitted). As to the first prong under Rule 36(b), whether the withdrawal or amendment would promote the presentation of the merits of the action, the movant has the burden to show that "upholding the admission would practically eliminate any presentation on the merits of the case." *Lanton v. Ocwen Loan Serv.*, No. 3:15-cv-372, 2017 U.S. Dist. LEXIS 58462, at *5 (S.D. Ohio Apr. 17, 2017) (citations omitted). If the movant can make such a showing, then the non-movant must show that it would be prejudiced by withdrawal or amendment. *Id.* at *6.

> The prejudice contemplated by Rule 36(b) is not simply that the party who initially obtained the admission will now have to convince the fact finder of its truth. Prejudice under Rule 36(b), rather, relates to special difficulties a party may face caused by a sudden need to obtain evidence upon withdrawal or amendment of an admission.

*Kerry Steel*, 106 F.3d at 154 (internal quotation marks and citation omitted).

### 2. Analysis

In their present Motions, the parties dispute whether Defendants' withdrawal of their original admission concerning Montgomery's role in assigning Plaintiff to work, and the filing of their belated denial, ECF No. 24-12, is permitted under Rule 36(b). On August 1, 2019, Defendants admitted that Corporal Kristin Montgomery, rather than Wayne County Deputy Sheriff Faye Jenkins, assigned Plaintiff to work

in the laundry unit at Dickerson.  ECF No. 24-15, PageID.468.  On October 4, 2019,

Plaintiff served Defendants with a Request to Admit that Montgomery was the

individual who classified and assigned Plaintiff to "work detail" while he was

incarcerated at Dickerson.  ECF No. 24-12, PageID.436–37.  While their responses

were due on November 3, 2019, Defendants untimely filed their responses on

December 5, 2019.  In their responses, Defendants denied Montgomery was the

officer who assigned either Plaintiff or Horton to work at Dickerson.  *Id.*  Moreover,

Defendants asserted:

> Investigation is ongoing.  Defendants contend that the Director of
> classification will be deposed to better explain the assignment of
> Plaintiff to work detail while at Dickerson.  Written answers to these
> Requests will be timely supplemented well in advance of the Director
> of Classification's deposition.

*Id.* at PageID.438–39.

As an initial matter, the Court denotes that Defendants did not file a separate

motion to withdraw this admission under Rule 36(b).  However, the Sixth Circuit

has determined that a withdrawal of an admission may be imputed from a party's

actions, including the filing of a belated denial.  *United States v. Petroff-Kline*, 557

F.3d 285, 293–94 (6th Cir. 2009) (citing *Chancellor v. City of Detroit*, 454 F. Supp.

2d 645, 666 (E.D. Mich. 2006) (parenthetical omitted)).  In *Petroff-Kline*, the court

explained that "[d]espite its failure to have filed a formal motion to withdraw its

claimed admissions, the Government's filing of a slightly overdue response

effectively served as such a withdrawal." *Id.* at 294.  Here, Plaintiff notably did not raise an objection, or seek the Court's intervention, on Defendants' belated denial, until the present briefings.

As stated *supra*, a district court has considerable discretion over whether to permit a withdrawal or an amendment of party's admission.  *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 154 (6th Cir. 1997) (internal quotation marks and citation omitted).  The first prong of the test articulated in Rule 36(b) is satisfied "when upholding the admission would practically eliminate any presentation on the merits of the case."  *Riley v. Kurtz*, No. 98-1077, 1999 WL 801560, at *3 (6th Cir. Sept. 28, 1999) (citation omitted).  The admission in question addresses the core issue of whether Plaintiff was assigned to the laundry unit at Dickerson by a specific employee, despite the "Keep Separate" alert in the jail's classification system.  The Court thus finds that the withdrawal of the admission will serve the presentation of the merits.  The first prong of the test articulated in 36(b) is therefore satisfied.

With regard to prejudice, the second prong of the test, the Court must evaluate whether Plaintiff, as the non-movant, will be unduly burdened if the Court allows Defendants to withdraw the admission.  Prejudice is not established simply because "the party who  initially obtained the admission will now have to convince the fact-finder of its truth."  *Allen v. Hardrock HDD, Inc.*, No. 16-13869, 2018 WL 2363924, at *5 (E.D. Mich. May 24, 2018) (citation omitted).  Prejudice instead "relates to

special difficulties a party may face caused by a sudden need to obtain evidence." *Id.* Other district courts within the Sixth Circuit have determined that neither "delay" nor "aggravation" alone rise to the "special difficulties" standard, especially when the change occurs before trial. *See, e.g.*, *id.* Here, the Court finds that this second prong is also satisfied. While the withdrawal will require Plaintiff to convince the fact finder of its truth, this does not amount to the prejudice contemplated by Rule 36(b). *See Vangel v. Szopko*, No. 12-15312, 2013 WL 5775463, at *5 (E.D. Mich. Oct. 25, 2013) (citing *Kerry Steel*, 106 F.3d at 154).

Additionally, the Court denotes that discovery had not yet ended at the time Defendants served their responses. Indeed, the parties entered a Stipulated Order to extend discovery to February 15, 2020, as well as the dispositive motion deadline, six days after Defendants served their responses. ECF No. 21. At the time, Plaintiff still had over three months to file his dispositive motion. Notably, the dispositive motion deadline was extended again on April 6, 2020. ECF No. 23. Other courts have been hesitant to find prejudice when a party receives responses before dispositive motions are due. *Compare Ouellette v. Fountainview of Monroe*, No. 11-13082, 2012 WL 13009196, at *3 (E.D. Mich. Jul. 17, 2012) (determining that there was no meaningful prejudice when a party received late responses after the close of discovery but before dispositive motions were due), *with Riley*, 1999 WL 801560, at *3 (finding prejudice when the moving party raised an issue under 36(b)

on the third day of trial, after the non-moving party rested his case).  As stated above, Plaintiff did not raise any objections to Defendants' tardy response until the present briefings.[1]  Accordingly, while it is true that discovery ended "almost eight months ago" at the time of Plaintiff's writing, ECF No. 28, PageID.1114, the Court questions Plaintiff's cited temporal prejudice when he waited to raise this issue at this juncture.

In sum, the Court does not find meaningful prejudice in allowing Defendants' late response to Plaintiff's Request to Admit.  Accordingly, the two Rule 36(b) factors favor withdrawal of Defendant's admission.

## B. Summary Judgment

### 1.  Legal Standard

Federal Rule of Civil Procedure 56(a) "directs that summary judgment shall be granted if there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998) (quotations omitted).  The court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, (1986).  No genuine dispute of material fact exists where the record "taken

---

[1] At the hearing, Plaintiff correctly explained that he did not have the burden to present a Rule 36(b) motion.  However, Plaintiff could have conducted other discovery related to the parties' dispute of fact as to who and how Plaintiff was assigned to the laundry unit upon receiving Defendants' late response.

as a whole could not lead a rational trier of fact to find for the non-moving party."
*Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
Ultimately, the court evaluates "whether the evidence presents a sufficient
disagreement to require submission to a jury or whether it is so one-sided that one
party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

### 2. Analysis

In their respective motions, Plaintiff seeks partial summary judgment on his
two counts as to Defendant Montgomery and Defendants seek summary judgment
as to Plaintiff's two counts in their entirety.  The parties disagree as to whether the
individual Defendants may avail themselves of qualified immunity relative to
Plaintiff's claims.  The Court will set forth the qualified immunity standard before
addressing each of Plaintiff's claims.

### a.  Qualified Immunity

Qualified immunity "shields officials from civil liability so long as their
conduct 'does not violate clearly established statutory or constitutional rights of
which a reasonable person would have known.'" *Chapman v. Brown*, 814 F.3d 447,
457 (6th Cir. 2016) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)).  To
assess whether a defendant is entitled to qualified immunity on summary judgment,
courts view the acts in the light most favorable to the plaintiff and assess whether a
reasonable juror could find that: (1) the defendant violated a constitutional right; and

(2) the right at issue was clearly established at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223 (2009). A district court may address the qualified immunity analysis in any order. *Kent v. Oakland Cty.*, 810 F.3d 384, 390 (6th Cir. 2016).

A qualified immunity determination will be incorporated in the analysis for each of Plaintiff's counts and defendant involved. The Court must evaluate the liability of each individual Defendant. *Phillips v. Roane Cty., Tenn.*, 534 F.3d 531, 542 (6th Cir. 2008) (when deciding qualified immunity defenses "the court should consider whether each individual defendant had a sufficiently culpable state of mind"). The plaintiff bears the ultimate burden of proof, *Garretson v. City of Madison Heights*, 407 F.3d 789, 798 (6th Cir. 2005) (citation omitted), and if the plaintiff fails to carry his burden as to either element of the qualified immunity analysis, then the official is immune from suit, *Cockrell v. City of Cincinnati*, 468 F. App=x 491, 494 (6th Cir. 2012). If a genuine dispute of material fact exists regarding a clearly established right, summary judgment on qualified immunity grounds will be denied.

### b. Eighth Amendment (Count I)

The Eighth Amendment imposes affirmative duties on prison officials to, among other things, "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citation omitted). In

order to raise a cognizable constitutional claim for deliberate indifference to a prisoner's safety, a prisoner must demonstrate two components: "(1) the alleged mistreatment was objectively serious; and (2) the defendant subjectively ignored the risk to the [prisoner's] safety." *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (citing *Farmer*, 511 U.S. at 834). Under the first, or objective, component, a plaintiff must show that he was exposed to a "substantial risk of serious harm." *Id.* (citation omitted). Under the second, or subjective, component, a plaintiff must show that the prison officials acted with "deliberate indifference" to his safety. *Id.* (citation omitted). An official is deliberately indifferent if he or she "knows of and disregards an excessive risk to [prisoner] health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Id.* at 767 (citation omitted).

### i. Defendant Montgomery

Plaintiff seeks summary judgment against Defendant Montgomery on Count I, alleging that Montgomery violated his Eighth Amendment right to be free from cruel and unusual punishment. ECF No. 24, PageID.116. Specifically, Plaintiff claims that Montgomery was deliberately indifferent to the known risk of harm Horton posed to him when she assigned both individuals to a laundry assignment at Dickerson. *Id.* at PageID.121. Separately in Defendants' cross-motion for summary judgment, Defendants argue that Plaintiff cannot prove that Montgomery drew the

inference that Plaintiff would be injured by being given a linen assignment and that there is no evidence that anyone overrode or bypassed the "Keep Separate" Alert System.  ECF No. 25, PageID.487–88.  Montgomery also asserts that qualified immunity protects her from liability, *id.* at PageID.492, and therefore summary judgment should be granted in her favor.

Here, there is a question of fact as to whether Montgomery acted with "deliberate indifference" to Plaintiff's safety.  The parties dispute whether Montgomery assigned Plaintiff to "Laundry" at Dickerson.  Plaintiff points Defendants' Response to his First Set of Interrogatories and Request for Production of Documents and Things, where Defendants affirm that "Defendant Jenkins did not assign Plaintiff to work in the laundry, Corporal Kristin Montgomery did."  ECF No. 24-15, PageID.468.  As noted above, Defendants have since withdrawn this admission through a late response to Plaintiff's Request to Admit.  Nevertheless, Plaintiff points to several other pieces of evidence to support his argument.  For example, Plaintiff emphasizes that Montgomery handwrote "Laundry" on both Plaintiff's and Horton's manila file jackets.  ECF No. 24, PageID.117; *see also* ECF No. 24-11.  During his deposition, Director of Inmate Classification Dennis Ramel testified that he recognized Montgomery's handwriting on the manila file jacket and confirmed the words "Laundry, D1" referred to "Housing Unit D1, 'Bed 225.'"  ECF No. 24-7, PageID.284.  Director Ramel was unable to confirm who assigned Horton

to Laundry, but he did suggest that it was "more than likely" Montgomery.  *Id.* at PageID.295.

Defendants argue that Plaintiff cannot prove deliberate indifference, in part, because "there is no evidence that Montgomery assigned Plaintiff to Laundry."  ECF No. 25, PageID.488.  They also suggest that the "written notation on a physical file jacket of the word Laundry [does] not automatically mean a job assignment was being made, but rather could have been a future sorting designation for the type of job Plaintiff could do if rehired."  *Id.*  As observed *supra*, in their Answers to Plaintiff's Request to Admit, Defendants denied that Montgomery was the officer who assigned either Plaintiff or Horton to "Laundry."  ECF No. 24-12, PageID.437.  Plaintiff acknowledges this inconsistent response in his Motion and also emphasizes that Defendants failed to submit written supplemental answers as suggested in their Answers.  ECF No. 24, PageID.114 (citing ECF No. 24-12, PageID.437 "Defendants realize their duty to supplement in this regard.  Written answers to these Requests will be timely supplied prior to any future depositions ….).

Defendants maintain that Plaintiff was assigned to "Linen Exchange," not "Laundry."  *Id.* at PageID.490.  They argue that "[t]here is no evidence by any witness that Plaintiff was ever doing what is universally understood as a LAUNDRY ASSIGNMENT, which would have been prohibited by the red flags 'KEEP SEPARATE' order built into the classification system."  ECF No. 27, PageID.1086.

Defendants cite to Plaintiff's signed incident statement, where Plaintiff wrote that he was changing out items in the F-1 housing unit.  ECF No. 25-13, PageID.948. According to Defendants, this admission "indicates that [Plaintiff] was doing the LINEN EXCHANGE job which is stationed near the Laundry, outside locked doors to the laundry and operated under the supervision of officer Cannady."  ECF No. 27, PageID.1085.

Defendants also cite to Officer Deon Cannady's affidavit, which details the layout of the laundry area and the job duties for those individuals assigned to the Linen Detail.  ECF No. 25-16.  Officer Cannady indicated that he recalled seeing Plaintiff after his lunch shift on December 7, 2016 "when he came out of the laundry area with the laundry cart."  *Id.* at PageID.957.  Officer Cannady also explained that the laundry area is "supervised by a separate civilian employee supervisor, who is in the center area office of the workers, but there are areas in the corners of the laundry station that are outside of the view of the video camera …."  *Id.* at PageID.958.  At the hearing, Defendants argued that Officer Cannady's affidavit is "most significant" in emphasizing the distinction between job assignments in "Laundry" and "Linen Exchange."

Importantly, Plaintiff asserts in his signed incident statement that he started his job "in Laundry."  ECF No. 25-13, PageID.948.  The Court also takes notice that Plaintiff testified that he believes he was assigned to "Laundry" on the day of the

physical altercation with Horton.  ECF No. 24-9, PageID.359.  He further explained that he learned of his assignment when an officer told him, "You have a job in the laundry room."  *Id.*  The Court also takes notice of Officer Mazloum's note from December 7, 2016, which indicates "Jamie, M … to Laundry / house keeping per Cpl. Cannady."  ECF No. 25-14, PageID.951.

The Court denotes that Officer Cannady's report cites generally to a "physical confrontation" in "laundry," without distinguishing which job assignment Plaintiff had: "Laundry" or "Linen Exchange."  ECF No. 25-15, PageID.953.  The Court also recognizes that Director Ramel testified that individuals working with "Linen Exchange" could be considered "Laundry workers."  ECF No. 24-7, PageID.281. He also explained that "[l]inen is a function of Housekeeping and Laundry."  *Id.* at PageID.291.  This contested distinction between "Laundry" and "Linen Exchange" further contributes to the parties' dispute of material fact as to whether Montgomery was deliberately indifferent in placing Plaintiff in an assignment that would pose a substantial risk of harm.

It is evident that the facts regarding Plaintiff's job assignment at Dickerson on the day of the assault are heavily disputed.  These issues, therefore, are more appropriately left for the jury to resolve, demonstrating that summary judgment is inappropriate at this stage for either Plaintiff or Montgomery.

Additionally, the unlawfulness of Montgomery's action would be clear to a reasonable officer.  The Sixth Circuit has held on several occasions that a prisoner's right to be protected from harm by other prisoners is clearly established.  *See Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011); *Leary v. Livingston Cnty.*, 528 F.3d 438, 443 (6th Cir. 2008); *Doe v. Bowles*, 254 F.3d 617, 620 (6th Cir. 2001); *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990) ("On several occasions, we have held that 'deliberate indifference' of constitutional magnitude may occur when prison guards fail to protect one inmate from an attack by another ….).  Accordingly, the constitutional right to be free from deliberate indifference to assault was clearly established at the time of the alleged constitutional violation.  Montgomery is thus not entitled to summary judgment on Plaintiff's Eighth Amendment claim.

In sum, the Court will deny Plaintiff's Motion, as well as Defendants' Motion as it relates to Defendant Montgomery, as to Count I.

### ii.    Defendant Torre

Defendants also argue that Torre is entitled to summary judgment as to Plaintiff's Eighth Amendment claim.  Defendants assert that Torre, a civilian supervisor of prison workers, did not have any involvement with Plaintiff after he left the Wayne County Jail.  ECF No. 25, PageID.491.  At the hearing, Plaintiff conceded that he is only bringing an Eighth Amendment claim against Montgomery.

Accordingly, the Court will grant Defendants' Motion as it relates to Defendant Torre on Plaintiff's Eighth Amendment claim (Count I).

### iii.    Defendant Jenkins

Lastly, Defendants argue in their Motion that Jenkins is entitled to summary judgment as to Plaintiff's Eighth Amendment claim.  Defendants assert that Jenkins, a classification officer at the Wayne County Jail, did not have any involvement with Plaintiff after he left the Wayne County Jail.  ECF No. 25, PageID.490.  Despite naming Jenkins in Count I of his First Amended Complaint, ECF No. 11, PageID.57, Plaintiff does not argue that Jenkins violated his Eighth Amendment right in his Response to Defendants' present Motion.  In fact, Plaintiff concedes that Jenkins should be dismissed as a party to his action.  ECF No. 28, PageID.1108 n.2 ("Defendant Jenkins succeeded Defendant Montgomery as the Classification Officer who assigned jobs to inmates at Dickerson.  Ms. Jenkins was trained by Montgomery in 2017.  *Jamie agrees to dismiss her as a party*.") (internal citations omitted) (emphasis added).

Accordingly, the Court will grant Defendants' Motion as it relates to Defendant Jenkins on Plaintiff's Eighth Amendment claim (Count I).

### c.  First Amendment (Count II)

Incarcerated individuals retain their rights to free speech under the First Amendment.  *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996).  A First

Amendment retaliation claim requires proof that "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) … the adverse action was motivated at least in part by the plaintiff's protected conduct." *Berkshire v. Beauvais*, 928 F.3d 520, 532 (6th Cir. 2019) (citations omitted).

### i.  Defendant Montgomery

Plaintiff seeks summary judgment against Defendant Montgomery on Count II, alleging that Montgomery violated his First Amendment right to free speech. ECF No. 24, PageID.122.  Specifically, Plaintiff claims that Montgomery retaliated against him when he engaged in protected speech by informing Corporal Jones about the prisoners' illegal activities with jail employees.   ECF No. 11, PageID.58. Separately in Defendants' cross-motion for summary judgment, Defendants argue that Plaintiff cannot prove that Montgomery retaliated against him.  ECF No. 25, PageID.489–90.  Montgomery also asserts that qualified immunity protects her from liability, *id.* at PageID.492, and therefore summary judgment should be granted in her favor.

Here, the parties do not appear to dispute the first element of Plaintiff's First Amendment retaliation claim.  Plaintiff alleges that his reports of a criminal conspiracy between prisoners and civilian jail staff constitutes protected speech

under the First Amendment.  ECF No. 24, PageID.122.  The Sixth Circuit has recognized that prisoners have an "undisputed First Amendment right to file grievances against prison officials on [their] own behalf" so long as the grievances are not frivolous.  *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).  The Court thus concludes that Plaintiff satisfies the first element of his claim.

The parties dispute whether the adverse actions alleged are sufficient to withstand the summary judgment stage.  Here, Plaintiff argues that Montgomery "knew [he] engaged in protected speech and Horton's vow to harm him for it."  ECF No. 24, PageID.122.  As asserted *supra*, Plaintiff recounted his conversation with Montgomery upon his arrival at Dickerson during his deposition:

> [S]he goes, "Who are you?"  I told her my name and she said, "You're the guy that told on them boys and put them on the hole … "Yeah, you a snitch.  You was telling on these guys and they ain't doing nothing."
>
> She had her hands in her pocket like this and she was like – I'm standing like how you were at, she was like this and she standing at her cubicle and I'm like where you at and she's looking at something and she just looking, "Yeah, I don't know what I'm going to do with you," and starting smiling after me, laughing at me.

ECF No. 24-9, PageID.360.  Plaintiff also testified that Montgomery called him a "rat" for reporting the alleged criminal conspiracy at the Wayne County Jail.  *Id.* at PageID.374.

Plaintiff alleges that Montgomery took two adverse actions against him.  Plaintiff first alleges that Montgomery "took away" Plaintiff's program time which

he earned as a trustee.   ECF No. 24, PageID.122.   Defendants argue that this allegation is an attempt to bolster Plaintiff's First Amendment claim.   ECF No. 25, PageID.489.   They cite to Director Ramel's deposition for support, as Director Ramel testified that program time is administered by a statute and that he personally awarded program time to Plaintiff, which he does on a daily basis with many prisoners in his capacity.   ECF No. 25-6, PageID.701.   Moreover, Director Ramel explained that Plaintiff came to Dickerson with twelve days, and that those days "remained the same" until the date of the assault, because Plaintiff wasn't working.   *Id.* at PageID.704.   He also testified that he personally added program time, totaling forty-four days, which resulted in Plaintiff's release on the day he returned from the hospital.   *Id.* at PageID.706.

While the Court agrees with Plaintiff to the extent that an adverse action is one that would "deter a person of ordinary firmness form engaging in protected activity," ECF No. 28, PageID.1127 (citation omitted), the Court finds that Plaintiff has not presented sufficient evidence to demonstrate Montgomery took an adverse action in taking away his program time.   The Court will thus turn to the second alleged action: that Montgomery assigned him to "Laundry" with Horton at Dickerson.   ECF No. 24, PageID.122.

As discussed in the Court's analysis regarding Plaintiff's Eighth Amendment claim, there remains a dispute of fact regarding Plaintiff's job assignment at

Dickerson, including whether Montgomery assigned Plaintiff to "Laundry" or to "Linen Exchange."  Plaintiff has thus established an adverse action related to his job assignment at Dickerson to render summary judgment unavailable at this juncture.

Lastly, the Court must determine whether the alleged adverse action was motivated at least in part by Plaintiff's protected conduct.  *Berkshire v. Beauvais*, 928 F.3d 520, 532 (6th Cir. 2019) (citations omitted).  This causation inquiry focuses on the "subjective motivation of the defendants."  *Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999).  "Because direct evidence of retaliatory intent is rare, circumstantial evidence may be the only means of establishing the connection between a defendant's actions and the plaintiff's protected conduct."  *Griffin v. Berghuis*, 563 F. App'x 411, 420 (6th Cir. 2014) (internal quotation marks and citation omitted).  The Sixth Circuit has determined that close "temporal proximity between protected conduct and retaliatory acts ... creat[es] an inference of retaliatory motive."  *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012).[1]

Here, Plaintiff testified that his conversation with Montgomery, where she allegedly called him a "snitch" and laughed when she purportedly asserted "Yeah, I don't know what I'm going to do with you," happened one day prior to his assault. ECF No. 24-9, PageID.361.  According to Plaintiff, this conversation occurred on December 6, 2016 and the incident with Horton in the "Laundry" assignment occurred on December 7, 2016.  *Id.*  Defendants do not dispute that Plaintiff was

given a job assignment the day before the incident.  *See* ECF No. 25, PageID.480. They instead dispute Plaintiff's specific job assignment.  *Id.*  When viewing the facts in the light most favorable to Plaintiff, the Court concludes that a reasonable inference could be drawn that Montgomery's action in assigning Plaintiff to his job one day prior to the altercation with Horton was motivated, at least in part, by retaliatory animus.

Accordingly, it is proper for a jury to interpret the aforementioned events and determine whether Plaintiff suffered adverse actions that derived from his reports of a criminal conspiracy between prisoners and civilian jail staff.

Additionally, the unlawfulness of Montgomery's action would be clear to a reasonable officer.  The Sixth Circuit has determined that precedent "clearly establishes that a potential threat" of disciplinary action is sufficiently adverse action to support a claim of retaliation.  *See Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009) (citing *Scott v. Churchill*, 377 F.3d 565, 571–72 (6th Cir. 2004)).  In *Pasley*, the plaintiff alleged that defendant placed him in physical danger by intentionally activating her personal protection device while he was attempting to leave her office.  *Id.*  Here, Plaintiff similarly alleges that Montgomery placed him in physical danger by assigning him to work in the same location as Horton shortly after conversing with Plaintiff and calling him a "snitch."

In sum, the Court concludes that a person of ordinary firmness could arguably be dissuaded from engaging in the protected conduct of reporting on a criminal conspiracy between prisoners and civilian jail staff, which, if it occurred as Plaintiff alleges, would have caused significant physical injuries. The Sixth Circuit has noted that, "while certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations, this threshold is intended to weed out only inconsequential actions." *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 2009). Montgomery is thus not entitled to summary judgment on Plaintiff's First Amendment claim.

Accordingly, the Court will deny summary judgment to both Plaintiff and Defendant Montgomery as to Count II.

### ii.    Defendant Torre

Defendants also argue that Torre is entitled to summary judgment as to Plaintiff's First Amendment claim. Defendants assert that Torre did not have any involvement with Plaintiff after he left the Wayne County Jail. ECF No. 25, PageID.491. Moreover, they contend that Torre's conduct at the Wayne County Jail does not amount to a violation of a constitutional right. ECF No. 30, PageID.1454. Defendants ulitmatley argue that there is not enough evidence to create a genuine issue of fact as to whether Torre retaliated against Plaintiff in violation of the First Amendment. ECF No. 25, PageID.491.

Plaintiff cites to Corporal Jones' incident report, which indicates that Torre called Plaintiff a liar who "constantly [made] false allegations about other inmates," to support his argument that Torre's statements amount to an adverse action.  ECF No. 28, PageID.1128 (citing ECF No. 25-3, PageID.502).  In the incident report, Torre also informed Corporal Jones that she received a phone call from an unnamed co-worker who told her that Plaintiff made allegations that she was involved in the smuggling scheme.  *Id.*  The jail's Internal Affairs Division investigation revealed that no communication between Torre and Plaintiff was ever discovered.  ECF No. 25-9.

Importantly, at Torre's deposition, she testified that she did not have access to the inmate Jail Management system in 2016.  ECF No. 24-8, PageID.332.  She also explained that she did not have the authority to "go in and pull someone out of a housing pod to a certain area of the jail."  *Id.*  Moreover, Torre testified that she cannot look in an individual's classification file to determine whether they are eligible for program time.  *Id.* at PageID.333.  Defendants emphasize Torre's limited role in the jail's operation system to support their argument that there is insufficient evidence to support Plaintiff's First Amendment claim.  *See* ECF No. 25, PageID.491.

Upon review of the record, the Court agrees with Defendants.  In *Thaddeus-X v. Blatter*, the Sixth Circuit recognized that some threats and deprivations are too

minimal to constitute adverse action.  There, the court held that minor harassment is insufficient to constitute adverse action, because recognition of such a standard would "trivialize the First Amendment." *Thaddeus-X v. Blatter*, 175 F.3d 378, 398–99 (6th Cir. 1999) (internal quotation marks and citation omitted).  A specific threat or comment may satisfy the adverse action requirement if it would deter a person of ordinary firmness from exercising his First Amendment rights.  *Id.* at 398; *see also Reynolds-Bey v. Harris*, 428 F. App'x 493, 503 (6th Cir. 2011) (collecting cases). However, certain threats or deprivations are so *de minimis* that they do not raise to the level of being constitutional violations.  *Thaddeus-X*, 175 F.3d at 398.  The Court does not find that Torre's action in calling Plaintiff a liar who "constantly [made] false allegations about other inmates" fall into the *de minimis* category.

In sum, even considering the aforementioned facts in the light most favorable to Plaintiff, the Court concludes that Plaintiff has not alleged an adverse action sufficient to sustain a claim of First Amendment retaliation as to Torre. Accordingly, the Court will grant Defendants' Motion as it relates to Defendant Torre on this claim.

### iii.    Defendant Jenkins

As discussed *supra*, Plaintiff concedes in his Response that Defendant Jenkins should be dismissed as a party to his action.  ECF No. 28, PageID.1108 n.2.

Accordingly, the Court will grant Defendants' Motion as it relates to Defendant Jenkins on Plaintiff's First Amendment claim (Count II) as well.

### d. *Monell* Claim

Defendants additionally argue that all "official capacity" claims against them should be dismissed.  ECF No. 25, PageID.494.  They argue that Plaintiff does not allege any unconstitutional county policies or customs, nor is there any evidence of training failures.  *Id.*  They contend that "the boilerplate language in Plaintiff's Amended Complaint, alleging that Wayne County had responsibility for training and supervision in all pertinent circumstances is insufficient to support an inadequate training claim."  *Id.* at PageID.495.

Plaintiff's "official capacity" claims must "demonstrate that the alleged federal violation occurred because of a municipal policy or custom."  *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)); *see also Miller v. Sanilac Cnty.*, 606 F.3d 240, 254–55 (6th Cir. 2010).  Plaintiff must make this showing by demonstrating one of the following:

> (1) the existence of an illegal official policy or legislative enactment;
> (2) that an official with final decision-making authority ratified illegal actions;
> (3) the existence of a policy of inadequate training or supervision; or
> (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Burgess*, 735 F.3d at 478 (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)). "A municipality 'may not be sued under § 1983 for an injury inflicted solely by its employees or agents.'" *Id.* (quoting *Monell*, 436 U.S. at 694). Plaintiff argues that the County's "deliberate acts" in bypassing (1) an investigation after the physical altercation, and (2) "a search of its records to disclose who, if not Montgomery, assigned [Plaintiff] and Horton to work in Dickerson" establish both a policy of inadequate training and supervision and a custom of tolerance of acquiescence of federal violations.  ECF No. 28, PageID.1131.

To succeed on a failure to train or supervise claim in the Sixth Circuit, a plaintiff must prove the following:

> (1) the training or supervision was inadequate for the tasks performed;
> (2) the inadequacy was the result of the municipality's deliberate indifference; and
> (3) the inadequacy was closely related to or actually caused the injury.

*Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006).

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Regets v. City of Plymouth*, 568 F. App'x. 380, 394 (6th Cir. 2014) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)).  There are two ways to demonstrate deliberate indifference.  A plaintiff could "show prior instances of unconstitutional conduct demonstrating that [a city] has ignored a history of abuse

and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Plinton v. Cnty. of Summit*, 540 F.3d 459, 464 (6th Cir. 2008) (quoting *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005)). In the alternative, a plaintiff could show "a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation . . ." *Id.* (quoting *Bryan Cnty.*, 520 U.S. at 409); *see also Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1244 (6th Cir. 1989); *Marchese v. Lucas*, 758 F.2 181 (6th Cir. 1985).

To reiterate, Plaintiff is proceeding, in part, on a failure to train claim.[2] ECF No. 28, PageID.1131. He must therefore demonstrate a (1) failure to train or supervise, (2) deliberate indifference, and (3) relatedness. *See Ellis ex rel. Pendergrass*, 455 F.3d at 700. Thus, if the evidence presents sufficient disagreement about whether there was a failure to train or supervise the County's officers, summary judgment is improper at this juncture. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52.

The Court finds that Plaintiff fails to meet his burden to demonstrate the "existence of a policy of inadequate training or supervision." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citation omitted). Plaintiff exclusively cites to

---

[2] The Court denotes that Plaintiff does not include a separate *Monell* claim in his First Amended Complaint.

Director Ramel's deposition to support his claim.  *See* ECF No. 28, PageID.1131. Director Ramel testified that there was no investigation conducted as to how Horton and Plaintiff were in the same area on the day of their physical altercation.  ECF No. 25-6, PageID.723.  He also testified that there was no discipline to staff.  *Id.* Importantly, however, Director Ramel explained that he is the Director of Classification, *id.* at PageID.658, and he did not testify to being the final decision-maker as to anything other than classification.  The Court declines to uphold Plaintiff's claim solely on Director Ramel's testimony without any other evidence.

Moreover, Plaintiff fails to present probative evidence as to the question of deliberate indifference as to the County.  He does not allege any pattern of constitutional violations on the part of the County.  He also does not present any evidence to support an "obvious potential" for constitutional violations on the part of the County.  As explained *supra*, deliberate indifference is a "stringent standard of fault" for which "even heightened negligence will not suffice."  *Plinton v. Cnty. Of Summit*, 540 F.3d 459, 465 (6th Cir. 2008) (citation omitted).  Accordingly, Plaintiff has not demonstrated that there is a genuine issue of material fact for a jury to consider as to Defendants" alleged policy of inadequate training and supervision.

! The Court also finds that Plaintiff fails to meet his burden to demonstrate "a custom of tolerance of acquiescence of federal rights violations."  *Burgess*, 735 F.3d at 478 (citation omitted).  Similar to a failure to train or supervise claim, a custom

of tolerance claim requires a showing that there was a pattern of inadequately investigating similar claims. *Burgess*, 735 F.3d at 478. Plaintiff does not point to any evidence to demonstrate such a pattern. As explained above, Plaintiff merely cites to Director Ramel's testimony concerning the physical altercation at issue in the present matter. Without more, these facts are insufficient to maintain a *Monell* claim against the County.

In sum, Defendants are entitled to summary judgment on Plaintiff's "official capacity" claims.

## IV. CONCLUSION

For the reasons articulated above, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment [#24] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment [#25] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that the remaining counts and Defendant are as follows:

Count I: Violation of Plaintiff's Eighth Amendment Rights (Defendant Montgomery, in her individual capacity)

Count II: Violation of Plaintiff's First Amendment Rights (Defendant Montgomery, in her individual capacity)

**IT IS FURTHER ORDERED** that the parties comply with the Amended Scheduling Order entered on this date.

**SO ORDERED.**

Dated:         December 30, 2020

/s/Gershwin A. Drain
HON. GERSHWIN A. DRAIN
United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
December 30, 2020, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager